1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    KIMBERLY R. OLSON,                     No.  2:16-CV-0956-DC-DMC

12              Plaintiff,                   <u>ORDER</u>

13        v.                                 and

14    PARTICIA SLOTE, et al.,                <u>AMENDED FINDINGS AND</u>
                                             <u>RECOMMENDATIONS</u>
15              Defendants.

16

17              Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

18    Court is Plaintiff's second amended complaint, ECF No. 18.

19              The Court is required to screen complaints brought by litigants who, as here, have

20    been granted leave to proceed in forma pauperis.  <u>See</u> 28 U.S.C. § 1915(e)(2).  Under this

21    screening provision, the Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23    from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. §§ 1915(e)(2)(A), (B).

24    Moreover, pursuant to Federal Rule of Civil Procedure 12(h)(3), this Court must dismiss an

25    action if the Court determines that it lacks subject matter jurisdiction.  Pursuant to Rule 12(h)(3),

26    the Court will also consider as a threshold matter whether it has subject-matter jurisdiction.

27    / / /

28    / / /

1

1                                      **I.  PLAINTIFF'S ALLEGATIONS**

2              Plaintiffs Kimberly R. Olson initiated this action filed on May 5, 2016. See ECF

3    No. 1.  Plaintiff is a resident of Hornbrook, Siskiyou County, California. See EFC No. 18, pg. 6.

4    Plaintiff was provided leave to amend and filed the first amended complaint on December 26,

5    2017. See ECF No. 7.  Plaintiff was once again provided leave to amend and filed the operative

6    second amended complaint on January 19, 2023. See EFC No. 18.  Plaintiff now names the

7    following defendants: (1) Patricia Slote; (2) Melissa Peterson (a.k.a. Melissa Tulledo); (3) Robert

8    Puckett Sr.; (4) Julie Bowles; (5) Clint Dingman; (6) Ernest; (7) Hornbrook Community Services

9    District (HCSD); (8) Steven Crittenden; (9) Hornbrook Community Bible Church Inc. (HCBC);

10   (10) Peter Kampa, and (11) John Does 3 through 20. See id. at 1-6.  Plaintiff no longer names Lee

11   Buckley, Robert Winston, and Kirsher, Winston & Boston, L.L.C. as defendants, who were listed

12   in the original complaint and the first amended complaint, nor Kevin Dixon, who was previously

13   listed in the first amended complaint.

14             Plaintiff alleges that Defendant Goff, as the Chief Operator of the water facilities

15   of the HCSD, had statutory duties to regularly inspect, oversee, and directly control day-to-day

16   operations of the water treatment plant and distribution system. See ECF No. 18, pg. 4.

17   According to Plaintiff, Defendant Goff was rarely present at the HCSD's facilities and falsely

18   represented to the State Water Resources Control Board (SWRCB) that he had been fulfilling his

19   duties when Defendant Dingman, who lacked the proper state certifications, performed those

20   duties. See id.

21             Plaintiff claims that despite failing to obtain and maintain the required water

22   treatment certification, Dingman engaged in water treatment activities for the HCSD every day,

23   violating state and federal laws and regulations. See id. at 11. Plaintiff claims that, knowing that

24   Dingman had no certification, HCSD, Slote, Puckett, Peterson, Bowles, Goff, and Kampa agreed

25   to cooperate on a scheme to have Dingman illegally undertake, and be paid for, those water

26   treatment-related duties. See id.  Plaintiff alleges that Dingman was unlawfully contracted and

27   paid to perform treatment operations at HCSD facilities. See id.

28   / / /

1    Plaintiff claims that chlorine was improperly added to the water supply on dozens

2    of occasions to the point of toxicity causing Plaintiff discomfort; injury and death to her food

3    crops, trees, shrubs, soil biota, livestock, and landscaping; and destruction of equipment. See id. 4

4    and 5.  Plaintiff claims that these harms were aggravated by the failure of Goff, Dingman, HCSD

5    and its Officers to alert the public regarding toxic chlorine levels that exceeded 4.0 mg/L, as

6    required by law. See id. at 5.  Plaintiff enlisted the aid of a Certified Water Treatment and

7    Distribution Operator to test her water on multiple occasions, finding concentrations of chlorine

8    in the water at times exceeding 8.0 mg/L and sometimes with no chlorine present at all. See id. at

9    12 n. 34.  Plaintiff claims that she notified the HCSD, its officers, and employees both in writing

10    and in-person of the illegality of this conduct without any response. See id. at 12.  Plaintiff

11    believes that each Board member, the HCSD, Kampa, and Goff knowingly permitted these events

12    and recklessly disregarded any potential harm to the public and the Plaintiff. See id.

13    Plaintiff believes that Goff resigned from his position due to disciplinary action

14    taken by SWRCB, which stripped him of his Water Treatment Operator certification. See id. at 5.

15    Specifically, Plaintiff believes that Goff was "renting out" his certification to water districts

16    throughout the state and failing to perform his duties as "Chief Operator" while representing

17    himself as such. See id.

18    According to Plaintiff, Defendant Hornbrook Community Bible Church, Inc.

19    (HCBC) was a commercial customer receiving water service from HCSD at a rate of $225.00 per

20    month. See id. at 5.  In addition to the church building, the HCBC has a residence on the same

21    parcel of land in the form of a detached parsonage – the home of the Minister and his family. See

22    id.  According to Plaintiff, HCBC should have been charged $270.00 per month for water usage

23    plus any charges incurred for water used over 15,000 gallons. See id.  Plaintiff claims that from

24    December 5, 2015, to November 29, 2017, HCSD, Slote, Puckett, Peterson, and Bowles reduced

25    the total charge to a single fee of $39.00 per month, in effect granting "gifts" of public funds each

26    month. See id. at 5 and 6.

27    / / /

28    / / /

3

1     Plaintiff claims that Crittenden and HCBC engaged in improper, ex parte contacts

2     with HCSD, Slote, Puckett, Dingman, and Bowles outside of public Board meetings to arrange

3     this "gift" of public funds. See id. at 6.  Plaintiff asserts that Crittenden sought similar "gifts" for

4     himself by arranging for reduced and/or waived fees for his home. See id.  According to Plaintiff,

5     this reduced what should have been a $110.00 per month charge to $78.00 per month. See id.

6     Plaintiff claims that she was denied reasonable accommodations under Title II of

7     the Americans Disabilities Act (ADA) by the HCSD, its Officers, agents, and employees. See id.

8     at 7.  According to Plaintiff, she is a disabled person as defined by State and Federal laws due to

9     significant mobility impairments. See id.  Plaintiff repeatedly requested individual Officers and

10    Board members to timely provide meeting agendas and materials in an alternative format because

11    Plaintiff's limited mobility made it difficult to access the local bulletin board in-person where

12    information was posted. See id.  Plaintiff claims that she made requests to individual Officers and

13    the Board both in person at public meetings and in writing for the opportunity to access public

14    records, kept at HCSD's various facilities, concerning water production and use/maintenance of

15    the wells and treatment plant, but all requests were denied or ignored. See id.  Plaintiff asserts that

16    other non-disabled persons were permitted access to the records and facilities. See id. at 7 and 23.

17    Plaintiff claims that these actions were done by the HCSD, Slote, Puckett, Peterson, Goff,

18    Bowles, and Dingman maliciously in retaliation for Plaintiff's pending complaints and assistance

19    to others for making complaints to State and Federal agencies. See id. at 22-23.

20    Plaintiff alleges that in 2014, Dingman became homeless and started spending

21    more time at the HCSD's water treatment facility, collecting junk, non-operative vehicles, and

22    personal items that he stored in or around the facility. See id. 13.  According to Plaintiff,

23    Dingman resided at the water treatment facility without paying from December 2015 through

24    November 2017. See id.  Even though the HCSD received several complaints concerning the

25    situation, the Board Defendants and Kampa approved of Dingman residing there. See id.

26    According to Plaintiff, Kampa lied to the Department of Industrial Relations ("DIR") about

27    Dingman living in the water treatment facility while encouraging Dingman to provide a false

28    address to the DIR to prevent further investigation. See id.

4

1          Plaintiff further alleges that Puckett, Slote, and Peterson granted Dingman

2    permission to move a travel trailer and various vehicles onto the treatment facility property and

3    attempted to designate him as a "caretaker" to allow him to use HCSD utilities and occupy the

4    treatment facility for free. See id.  According to Plaintiff, Dingman's occupation and use of the

5    industrial heater, hot-plates, refrigerators, microwaves, television, and other utilities caused the

6    power bill to increase, costing HCSD thousands of dollars more per year to operate. See id. at 14.

7    Plaintiff claims that there was no rational or reasonable purpose for Dingman's occupation nor is

8    there evidence that would support a legitimate purpose. See id.

9          Plaintiff claims that Defendant Slote breached HCSD's employment contract with

10   Dingman by overpaying him, permitting him to be paid for illegal duties relating to water

11   treatment, and allowing him to reside at the water treatment facility. See id. at 15.  Plaintiff

12   further alleges that Slote entered into a contract with Dingman on behalf of HCSD, without any

13   authorization from the Board, for "past-due wages" and a "release of all claims" held against the

14   district in exchange for several thousand dollars, authorizing Bowles to pay him out. See id.

15   Plaintiff alleges that Slote submitted false requests for payments, including back-payments, and

16   increased Dingmans pay to $15.00 an hour. See id.

17         Plaintiff alleges that both Slote and Bowles approved paychecks and timesheets for

18   Dingman paying him $15.00 per hour and including extra hours worked per month over the limit

19   imposed by Dingman's contract of 35 hours. See id.  Plaintiff claims that all excess hours were

20   approved by Slote and paid out by Bowles without prior Board approval. See id.  Additionally,

21   Plaintiff claims that Dingman also reported time on his timesheet that he didn't work, charging

22   the HCSD at least one extra hour per day. See id.

23         Plaintiff alleges that beginning December 5, 2015, and continuing through

24   November 29, 2017, the HCSD, Slote, Puckett, Peterson, Bowles, and Dingman "jointly acted" to

25   waive various fees and charges to certain HCSD customers, to improperly assess fees, charges,

26   and assessments to certain HCSD customers, reclassify some customers, and change residential

27   water rates without voter approval required by the Bylaws. Id. at 18. Plaintiff claims that the

28   actions by those Defendants interfered with Plaintiff's voting rights and the rights of other

                                        5

1   electors in the district. See id. at 18 and 19. Furthermore, Plaintiff claims that the actions of those

2   Defendants disenfranchised Plaintiff and other electors of the district, doing so without notice, or

3   opportunity to be heard, and violating her Due Process rights. See id. at 19.  In support of this

4   claim, Plaintiff attaches Resolution #14-025 which shows Plaintiffs' signature. See id. at 30.

5   Plaintiff claims that Defendants HCSD, Slote, Puckett, Peterson, Goff, Bowles, and Dingman

6   denied her right to vote maliciously in retaliation for Plaintiff's pending complaints and assistance

7   to others for making complaints to State and Federal agencies. See id. at 22-23.

8              According to Plaintiff, on April 18, 2014, the Board adopted Resolution #14-025,

9   which lowered the rate per gallon for residential water service by increasing the monthly base

10  allotment from 12,000 gallons to 15,000 gallons and charging $45.00 monthly fee instead of

11  $39.00 monthly fee set forth in the Bylaws at 1-5.010. See id.  Plaintiff claims that beginning

12  December 5, 2015, and continuing through March 31,2016, Defendants Slote, Puckett, Peterson,

13  Bowles, and later Kampa, imposed and collected from everyone in the district for residential

14  water service at a rate of $39.00 per month, while charging the Plaintiff more. See id.  Plaintiff

15  believes that the discriminatory billing was only imposed on her in retaliation for her legal actions

16  and enforcement complaints against the HCSD and its Officers. See id. at 20.

17             Plaintiff claims that beginning December 16, 2015, she regularly requested access

18  to HCSD records, and for copies of documents and records. See id. at 20.  Defendant Slote

19  permitted access to some HCSD records but refused access to other relevant records See id.

20  Plaintiff made California Public Records Act (CPRA) requests by letter, email, and verbally. See

21  id.  Plaintiff claims that insufficient responses to her CPRA requests were made by HCSD, Slote,

22  Puckett, Peterson, Kampa, Bowles, Goff, Dingman. See id.  Plaintiff claims that those Defendants

23  repeatedly denied access to and/or production of public records, as well as opportunity for

24  physical record inspection during regular business hours, despite multiple inquiries. See id.

25  Additionally, Plaintiff claims that HCSD, Slote, Puckett, Peterson, Kampa, Bowles, Goff, and

26  Dingman violated the CPRA by failing to provide written determinations regarding each of

27  Plaintiff's requests within 10 days and explanation of documents claimed to be exempt from

28  disclosure. See id.

1          According to Plaintiff the HCSD, Slote, Puckett, Peterson, Kampa, Dingman, and

2   Goff each knew that HCSD's Well #3 was unusable for domestic water due to high levels of toxic

3   Boron and salts. See id. at 21.  Plaintiff claims that the water from the well flows into Rancheria

4   Creek (located near Plaintiff's house) feeding into the Klamath River without a permit from the

5   EPA, and thus violating the Clean Water Act. See id.  Plaintiff claims that the release of toxic

6   water from the well, poisons plants, amphibians, fish, insects, and birds. See id.

7          Based on these allegations, Plaintiff asserts six federal claims as follows:

8   | | |
9   | Count I | Deprivation of Rights as Granted by the HCSD Bylaws, and without Due Process |
10  | Count II | Violation of Clear Water Act |
11  | Count III | Violation of Safe Water Drinking Act |
12  | Count IV | Unlawful Retaliation for Exercise of Constitutional Rights |
13  | Count V | Conspiracy; Deprivation of Equal Protections; 42 USC §1985(3), §1986 |
14  | Count VI | ADA Violations as to HCSD, Puckett, Slote, Peterson, Dingman, and Kampa |

15  ECF No. 18, pgs. 21-23

16  Plaintiff also asserts state claims as follows:

17  | | |
18  | Count I | Negligence by HCSD, Puckett, Slote, Peterson, Goff, Dingman, and Kampa |
19  | Count II | Diversion of, and Gifts of, Public Funds as to Michelle Hanson |
20  | Count III | Gifts, and Waste of, Public Funds as to John Does |
21  | Count IV | Failure to Impose, Standby, Availability Fee; Fiduciary Duty |
22  | Count V | Breach of Fiduciary Duty, HCSD Bylaws – General |
23  | Count VI | Nuisance |
24  | Count VII | Negligent Infliction of Emotional Distress |
25  | Count VIII | Violation of the CPRA as a Waste of Public Funds |
26  | Count IX | Gifts of Public Funds to HCBC and Crittenden |
27  | Count X | Gifts of Public Funds to Dingman; Unlawful Use of HCSD Facility |

28  See id. at 24-28.

7

1

## II.  DISCUSSION

2    **A.    Federal Claims**

3          Plaintiff's second amended complaint, ECF No. 18, provides sufficient facts for

4    the following federal claims to proceed: Clean Water Act, Safe Drinking Water Act, Retaliation,

5    Conspiracy and Deprivation of Equal Protections (42 USC §1985(3) and §1986), and Americans

6    with Disabilities Act. However, Plaintiff fails to state a claim upon which relief can be granted for

7    Due Process because, as discussed below, Plaintiff's own admission negates an essential element

8    of such a claim. Thus, this Court will recommend that the due process claim be dismissed while

9    the other claims proceed.

10                      1.      Due Process

11         In order to state a claim of deprivation of due process, a plaintiff must allege both

12   the existence of a liberty or property interest and that said liberty or interest was deprived without

13   the requisite process.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth,

14   408 U.S. 564, 569 (1972). Plaintiff asserts that her due process rights were violated with the

15   passing of Resolution #14-025 because "Defendants did so without notice . . . [and] opportunity

16   to be heard." See ECF No. 18, pg. 21. However, Plaintiff attaches Resolution #14-025 to the

17   complaint, showing that Plaintiff signed the resolution on the date of its' passing. See id. at 30.

18   By Plaintiff's own admission, she was present, had the opportunity to be heard, and even signed

19   off on the adoption of the bylaw. Thus, Plaintiff is unable to make a due process claim arising

20   from Resolution #14-025. Given this, the Court will recommend that claim be dismissed.

21                      2.      Clean Water Act

22         The Clean Water Act provides a cause of action for citizens to bring a private suit

23   against alleged violators of the Act after specific notice is given to the alleged violator. See 33

24   U.S.C. § 1365(a), (b). Here, Plaintiff claims that Defendants HCSD, Slote, Puckett, Peterson,

25   Kampa, Dingman, and Goff violated the Clean Water Act by knowingly allowing HCSD's Well

26   #3, which contained high levels of toxins, to flow into Rancheria Creek. See ECF No. 18, pgs. 21-

27   22.  Plaintiff asserts that she provided the requisite notice and Defendants failed to remedy the

28   issue. See id. at 7. Therefore, this claim should proceed.

1

3.      Safe Drinking Water Act (SDWA)

2          The Safe Drinking Water Act (SDWA) provides a private cause of action for

3    citizens to bring a suit against alleged violators of the Act after specific notice is given to the

4    alleged violator. See 42 U.S.C. § 300j-8.  According to Plaintiff, Defendant Dingman operated

5    water treatment facilities without the required certifications and "illegally and improperly add[ed]

6    chlorine" to the water in violation of the SDWA. See ECF No. 18, pg. 22. Plaintiff claims that

7    Defendants HCSD, Slote, Puckett, Peterson, Goff, and Kampa knowingly agreed to allow

8    Dingman to do so, thus violating SDWA. See id. Plaintiff asserts that she provided the requisite

9    notice and Defendants failed to remedy the issue. See id. at 7. Therefore, this claim should

10   proceed.

11

4.      Retaliation

12         To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that

13   (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill

14   a person of ordinary firmness from continuing to engage in the protected activity, and (3) the

15   protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v.

16   Welty, 818 F.3d 920, 932 (9th Cir. 2016) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d

17   755, 770 (9th Cir. 2006)).

18         Plaintiff contends that Defendants HCSD, Slote, Puckett, Peterson, Goff, Bowles,

19   and Dingman charged Plaintiff more for water, prevented Plaintiff from accessing public records,

20   and did not allow Plaintiff to vote on "certain HCSD administrative changes or Board actions."

21   ECF No. 18, pg. 23. According to Plaintiff, these actions were taken in retaliation for her

22   "'Brown Act Lawsuits'; complaints, and assistance to others making complaints to State and

23   Federal enforcement agencies." Id. at 22. Therefore, this claim should proceed.

24

5.      Conspiracy; Deprivation of Equal Protections; 42 USC §1985(3), §1986

25         A section 1985(3) claim requires "four elements: (1) a conspiracy; (2) for the

26   purpose of depriving, either directly or indirectly, any person or class of persons of the equal

27   protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in

28   furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or

9

1  deprived of any right or privilege of a citizen of the United States." <u>Sever v. Alaska Pulp Corp.</u>,

2  978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). "Section 1986 authorizes a remedy against

3  state actors who have negligently failed to prevent a conspiracy that would be actionable under §

4  1985." <u>Cerrato v. San Francisco Cmty. Coll. Dist.</u>, 26 F.3d 968, 971 n. 7 (9th Cir. 1994).

5          According to Plaintiff, Defendants HCSD, Slote, Puckett, Peterson, Goff, Bowles,

6  and Dingman conspired to charge her $45 a month for water, while the other residents were

7  charged $39, thus depriving her of equal protection as a class of one. <u>See</u> ECF No. 18, pg. 23.

8  Therefore, this claim should proceed.

9                  6.      <u>Americans with Disabilities Act (ADA)</u>

10                Title II of the Americans with Disabilities Act ("ADA") provides:

11
        Subject to the provisions of this subchapter, no qualified individual with a
12  disability shall, by reason of such disability, be excluded from participation in or
        be denied the benefits of the services, programs, or activities of a public entity, or
13          be subjected to discrimination by any such entity.

        42 U.S.C. § 12132.
14

15          To establish a violation of Title II of the ADA, "a plaintiff must show: (1) he is a

16  'qualified individual with a disability'; (2) he was either excluded from participation in or denied

17  the benefits of a public entity's services, programs or activities, or was otherwise discriminated

18  against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by

19  reason of his disability." <u>Weinreich v. Los Angeles Cty. Metro. Transp. Auth.</u>, 114 F.3d 976, 978

20  (9th Cir. 1997) (quoting § 12132).

21          While Plaintiff does not say her underlying disability, she states that she does

22  qualify as disabled under the ADA. <u>See</u> ECF No. 18, pgs. 7 and 23. At this stage of litigation, the

23  Court accepts that representation. According to Plaintiff, Defendants HCSD, Slote, Puckett,

24  Peterson, Dingman, and Kampa "failed to accommodate Plaintiff's disability" by not providing

25  her access to HCSD Board meetings, meeting materials, and "refusing to provide CPRA access"

26  to records. <u>Id.</u> at 23. Plaintiff contends that those without disabilities were provided access to the

27  same meetings, materials, and records. <u>Id.</u> Therefore, this claim should proceed.

28  / / /

**B.    Pendant State Claims**

Plaintiff makes out the following state claims: negligence, four §526(a) claims, nuisance per se, fiduciary duty, and a California Constitution Article XVI §5 claim. Therefore, those claims should proceed. However, Plaintiff fails to state a claim upon which relief can be granted for both the §526(a) claim based on a violation of the CPRA and the Negligent Infliction of Emotional Distress (NIED) claim, as discussed below. Thus, the undersigned will recommend such claims be dismissed.

1.    Negligence

A negligence action under California law consists of four elements: (1) duty; (2) breach; (3) causation; (4) and damages. See Mayall v. USA Water Polo, Inc., 909 F.3d 1055, 1060 (9th Cir. 2018); A.B. Concrete Coating, Inc. v. Wells Fargo Bank Nat'l Assoc., 491 F. Supp. 3d 727, 738 (E.D. Cal. 2020); Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687 (Cal. Ct. App. 2018). In other words, plaintiffs in negligence suits must establish a duty of care, breach of that duty, and the breach's proximate causation of a resulting injury. See Vasilenko v. Grace Family Church, 3 Cal. 5th 1077, 1083 (2017).

Plaintiff contends that Defendants HCSD, Puckett, Slote, Peterson, Goff, Dingman, and Kampa failed to "exercise reasonable care over the water treatment processes" in violation of the SDWA, 40 CFR § 141.54 (setting federal maximum levels of disinfectants) and 22 CCR § 64533.5 (setting California's maximum contaminant levels). See ECF No. 18, pg. 24. According to Plaintiff, Defendants' failure to give warnings about the water exceeding the legal levels of chlorine, as required by California Health and Safety Code § 116450 and § 116455, resulted in property damage to Plaintiff. Therefore, this claim should proceed.

2.    California Code of Civil Procedure §526(a)

According to Plaintiff, state Counts Two, Three, Four, Eight, and Nine necessitate injunctive relief under California Code of Civil Procedure §526(a). This section authorizes remedial injunctive relief, when "the expenditure of public funds which [the taxpayer] seeks to enjoin is illegal." Herzberg v. Cty. of Plumas, 133 Cal. App. 4th 1, 23-24 (2005). At this stage of litigation, Plaintiff provides sufficient facts for claims regarding public funds provided to

1    Michelle Hanson's legal fees, improperly classified water rates and fees as to John Does, failure

2    to impose standby and availability fees, and the unlawful use of HCSD Facility by Defendant

3    Dingman. However, Plaintiff's claim that Defendants failure to comply with the CPRA is not

4    actionable, as discussed below.

5                                     i.        *"Diversion of, and Gifts of, Public Funds as to Michelle Hanson"*

6              Plaintiff contends that Defendant HCSD, Puckett, Slote, and Peterson illegally

7    "diverted monies from HCSD accounts to Michelle Hanson . . . towards her privately-incurred

8    legal fees." ECF No. 18, pg. 24. Plaintiff alleges this constituted an illegal expenditure of public

9    funds which could be remedied with §526(a) injunctive relief and therefore, this claim should

10   proceed.

11                                    ii.       *"Gifts, and Waste of, Public Funds as to John Does"*

12             According to Plaintiff, Defendants HCSD, Slote, Puckett, Peterson, Kampa, Goff,

13   Dingman, and Bowles reduced water rates and other charges, declined to collect past-due

14   accounts, or gifted public funds to John Does[1] in violation of the governing bylaws. See ECF No.

15   18, pg. 24. Plaintiff alleges this constituted an illegal waste of public funds which could be

16   remedied with §526(a) injunctive relief and therefore, this claim should proceed.

17                                   iii.       *"Failure to Impose, Standby, Availability Fee; Fiduciary Duty"*

18             Plaintiff asserts that Defendants HCSD, Slote, Puckett, Kampa, and Bowles were

19   required to impose and collect "standby" and "availability" fees per HCSD Resolution #14-022

20   and relevant bylaws but failed to do so. See ECF No. 18, pg. 25. Plaintiff alleges this constituted

21   an illegal waste of public funds which could be remedied with §526(a) injunctive relief and

22   therefore, this claim shoukd proceed.

23                                   iv.        *"Violation of the CPRA as a Waste of Public Funds"*

24             Plaintiff asserts that Defendants failure to comply with the CPRA constitutes a

25   waste actionable under §526 (a), relying on Blair v. Pitchess as a basis for this claim. See ECF

26   No. 18, pg. 27. The Court disagrees. Failing to respond to requests, as required by law, does not

27   amount to "performing illegal acts" as addressed by Blair. In Blair, the Court held that actions

28         [1]       The Court assumes this refers to the John Does 3-20 Plaintiff lists as Defendants.

12

1    taken in violation of the 4th Amendment by county officials, who at the time of the action were

2    being paid by the county, could constitute waste for the purposes of §526(a) remedial action[2].

3    Blair v. Pitchess, 5 Cal. 3d 258, 268-69 (1971). There is a legal distinction between action and

4    inaction.  See Weirum v. RKO Gen., Inc., 15 Cal. 3d 40, 49 (1975). Here, Plaintiff seeks to

5    extend the holding in Blair to Defendants purported failure to act[3]. See ECF No. 18, pg. 27.

6    Finding the law does not support such a claim, the Court will recommend this claim be dismissed.

7                              v.        "*Unlawful Use of HCSD Facility*"

8                    The purpose of §526 is to provide standing for taxpayers to remedy "illegal or

9    wasteful expenditure of public funds or damage to public property." McLeod v. Vista Unified

10   Sch. Dist., 158 Cal. App. 4th 1156, 1165 (2008). According to Plaintiff, Defendants Slote,

11   Puckett, Peterson, Kampa, Goff, and Dingman allowed Dingman to unlawfully reside at the

12   HCSD water treatment facility, resulting in "sanitary and physical hazards" while HCSD paid the

13   utility costs of such use. See ECF No. 18, pgs. 27-28. Plaintiff's claim that was a wasteful

14   expenditure of public funds and damage to public property should proceed.

15                      3.        Breach of Fiduciary Duty

16                    The elements of a claim for breach of fiduciary duty are: "(1) existence of a

17   fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the

18   breach." Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995). Plaintiff contends that

19   Defendants Slote, Puckett, Peterson, Bowles, and Kampa breached their fiduciary duties "to the

20   District by: unlawfully reducing and waiving various fees for certain customers; misclassifying

21   customers; failing to collect overdue accounts; and, failing to properly impose multiple [fees]."

22   ECF No. 18, pg. 25. According to Plaintiff, these actions all violated either Resolution #14-022 or

23   the HCSD Bylaws, causing economic harm to the District. See id. Thus, Plaintiff alleges the

24   existence of a fiduciary duty, breach of such duty by acting in violation of the governing

25   resolutions or bylaws, and damages caused by the breach. Therefore, this claim should proceed.

26            [2]        The Court notes that portions of Blair have been superseded by statute but those are separate from
     the holding discussed here.
27            [3]        Plaintiff also fails to establish that Defendants were paid employees at the time of their inaction, in
     accordance with the holding in Blair. Even if Plaintiff could establish that the Defendants were paid employees, the
28   claim is not cognizable for the reasons stated above.

                                            13

1              4.      Nuisance Per Se

2              California recognizes nuisance *per se*. <u>City of Monterey v. Carrnshimba</u>, 215 Cal.

3    App. 4th 1068, 1086 (Cal. Ct. App. 2013). A nuisance *per se* arises when a legislative body with

4    lawful jurisdiction, in the exercise of police power, expressly and legislatively declares a

5    particular substance, object, activity, or other circumstance to be a nuisance. <u>See</u> <u>id.</u>; <u>City of</u>

6    <u>Claremont v. Kruse</u>, 177 Cal. App. 4th 1153, 1163 (Cal. Ct. App. 2009). California Health and

7    Safety Code §116670 declares any "failure to comply with any primary drinking water standard"

8    a public nuisance. Cal. Health & Safety Code § 116670.

9              According to Plaintiff, Defendants Slote, Puckett, Peterson, Kampa, Goff and

10   Dingman caused, were aware of, and did not remedy chloring levels in the water that violate the

11   drinking water standard. <u>See</u> ECF No. 18, pg. 26. Thus, Plaintiff's nuisance per se claim, arising

12   from Defendants' alleged failure to adhere to primary drinking water standards, should proceed.

13             5.      Negligent Inflication of Emotional Distress (NIED)

14             Negligent inflication of emotional distress (NIED) is not an independent tort

15   doctrine in California. <u>See</u> <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965, 984, 25 Cal.

16   Rptr. 2d 550, 863 P.2d 795 (1993). Rather, NIED "is a form of the tort of negligence, to which

17   the elements of duty, breach of duty, causation and damages apply." <u>Griffith v. Bank of Am.,</u>

18   <u>N.A.</u>, No. CV-11-5867 PA FFMX, 2011 U.S. Dist. LEXIS 150940, 2011 WL 6849048, at * 9

19   (C.D. Cal. Dec. 13, 2011) (quoting <u>Huggins v. Longs Drug Stores Cal., Inc.</u>, 6 Cal. 4th 124, 129,

20   24 Cal. Rptr. 2d 587, 862 P.2d 148 (1993)). An allegation of property damage and fear of

21   physical injury is not sufficient to recover emotional distress damages arising out of a negligence

22   claim. <u>See</u> <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 555-56 (1999); <u>Gravillis v. Coldwell Banker</u>

23   <u>Residential Brokerage Co.</u>, 143 Cal. App. 4th 761, 762 (2006).

24             Here, Plaintiff seeks to recover for NIED based on "extensive harm and/or

25   destruction to Plaintiff's yard, plant, trees, bushes, soil, garden crops, livestock, financial well-

26   being, home appliances and fixtures, and personal equipment." <u>See</u> ECF No. 18, pg. 26. Given

27   Plaintiff's NIED claim relies solely on an allegation of property damage, the Court will

28   recommend that this claim be dismissed.

                                        14

1              6.      "Gifts of Public Funds to HCBC and Crittenden"

2          The California Constitution Article XVI §5 prohibits "the Legislature, nor any

3    county, city and county, township, school district, or other municipal corporation" from making

4          an appropriation, or pay from any public fund whatever, or grant anything to or in
           aid of any religious sect, church, creed, or sectarian purpose, or help to support or
5          sustain any school, college, university, hospital, or other institution controlled by
           any religious creed, church, or sectarian denomination whatever nor shall any
6          grant or donation of personal property or real estate ever be made by the state, or
           any city, city and county, town, or other municipal corporation for any religious
7          creed, church, or sectarian purpose whatever . . .

8          Cal. Const. Art. XVI, §5.

9          Plaintiff asserts that Defendants Hornbrook Community Bible Church, Inc.

10   (HCBC) and Crittenden "received gifts of public funds in the amount of at least $2,772.00 [and]

11   $384.00" respectively. ECF No. 18, pg. 27. According to Plaintiff, these funds were provided in

12   the form of "unlawfully reduced and/or waived fees." Id. at 5-6.  Plaintiff contends this

13   demonstrates "favoritism" extended to HCBC and Crittenden, the Deacon of the HCBC in

14   violation of California's 'no aid clause.' Id. at 27. Plaintiff alleges these actions by Defendants

15   HCBC and Crittenden thus violated California's Constitution, Article XVI §5. See id. This claim

16   should proceed.

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## III.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1.      It is ORDERED that the Clerk of the Court terminate the following individuals, who are no longer named in the operative complaint: Lee Buckley, Robert Winston, Kirsher, Winston & Boston L.L.C. and Kevin Dixon;

2.      It is RECOMMENDED that Federal Claim Count I – Deprivation of Rights as Granted by the HCSD Bylaws, and without Due Process be dismissed with prejudice; and

3.      It is RECOMMENDED that State Claim Count VII – Negligent Infliction of Emotional Distress be dismissed with prejudice; and

4.      It is RECOMMENDED State Claim Count VIII – Violation of the CPRA as a Waste of Public Funds be dismissed with prejudice; and

5.      It is RECOMMENDED that this action proceed on the second amended complaint on Plaintiff's remaining claims (Federal: Count II, Count III, Count IV, and Count V; State: Count I, Count II, Count III, Count IV, Count V, Count VI, Count IX, and Count X).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  March 26, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

16